IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHANIE FISCHER | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CAUSE NO. 4:21-CV-03522 |
| | § | |
| AMGUARD INSURANCE COMPANY | § | |
| | § | |
| *Defendant.* | § | |

## DEFENDANT AMGUARD INSURANCE COMPANY'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant AmGUARD Insurance Company files this Motion for Partial Summary Judgment, regarding Plaintiff's extra-contractual claims, and would respectfully show the Court as follows:

**I.  SUMMARY OF THE ARGUMENT**

This is an insurance coverage dispute relating to a property insurance claim by Plaintiff Stephanie Fischer's claim for damages allegedly sustained to her rental property during a freeze event occurring on or about February 21, 2021. Plaintiff has asserted claims from breach of contract, violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act (DTPA), and breach of the common law duty of good faith and fair dealing. AmGUARD moves for summary judgment on Plaintiff's extra-contractual claims. As outlined below, because there is a bona fide dispute to coverage, Plaintiff cannot recover on these claims.

## II. STATEMENT OF UNDISPUTED FACTS

Defendant AmGUARD Insurance Company ("AmGUARD") issued Policy No. STHO140050 to Plaintiff Stephanie Fischer for the policy period from August 14, 2020 to August 14, 2021 (the "Policy").[1] On or about February 21, 2021, Plaintiff reported water damage to her rental property, a single family home (the "Property"), after being alerted about damage by her property manager, Cosmo Mata.[2] AmGUARD acknowledged the claim (Claim No. STHO14050-001-001-001) the next day and began the adjustment process.[3] As part of its acknowledgment, among other things, AmGUARD requested that Plaintiff "not make any permanent repairs until an adjuster ha[d] inspected the damaged property," set aside damaged property for inspection, preserve the affected area, document the damage, and keep a record of any necessary expenses that were incurred.[4] AmGUARD then assigned a field adjuster to conduct an inspection of the Property[5] and advised Plaintiff.[6]

Calvin King, the assigned field adjuster with Pilot Catastrophe Services, Inc., contacted Plaintiff on February 26, 2021, and conducted an inspection of the Property on March 8, 2021.[7] Before the inspection was conducted, however, Plaintiff had the house "gutted" on or about February 28, 2021, removing, among other things, carpeting, wall and ceiling sheetrock, 17 doors, bathtubs, and "all furniture" from the home.[8]

---

[1] Ex. A, Policy No. STHO140050.
[2] Ex. B, Deposition of Stephanie Fischer (Nov. 9, 2022) at 31:17-32:3.
[3] Ex. C, Claim Acknowledgement Memo; Ex. D, Letter from P&C Claims Team [AmGUARD] to Stephanie Fischer (Feb. 22, 2021) (the "Claim Acknowledgement Letter").
[4] Ex. D, Claim Acknowledgement Letter.
[5] Ex, E, Email from AmGuard to Pilot Catastrophe Services, Inc. (Feb. 23, 2021).
[6] Ex. F, Claim Notes at p. 5.
[7] Ex. G, Pilot Report (March 28, 2021); Ex. P, Email from Calvin King to AmGUARD forwarding Plaintiff's repair estimate of $429,000 and $364,800 (March 30, 2021); Ex. Q, Collection of Emails forwarded to Calvin King from Plaintiff and her agents.
[8] Ex. B, Fischer Depo at 51:17-23; *see also* Ex. G, Pilot Report at pp. 2-3; Ex. H, Mata Invoice (Feb, 28, 2021).

Plaintiff attended the March 8 inspection, during which she notes that Mr. King inspected "where the pipes were located, where they were broken on both sides of the [Property]," and took photographs of the Property.[9] Plaintiff recalls pointing out pipes in the ceiling to Mr. King but does not otherwise recall any conversation with him during or after the inspection.[10] Nor does she recall any conversation with AmGUARD, directly.[11]

After completing the inspection, Plaintiff and Mr. Mata, her property manager, communicated with Mr. King, providing him with estimates and photographs, after which Mr. King prepared an April 21, 2021 Report and Estimate.[12] After reaching an agreement with Mr. Mata about some of the claimed damage, Mr. King estimated that the replacement cost value of the Property was $247,280.80; and was $1,942.48 for the Property's allegedly damaged contents.[13] This revised estimate was provided to AmGUARD on or about May 27, 2021.[14] After receiving the estimate, an AmGUARD adjuster notified the Plaintiff and informed her that the estimate was under review "due to the scope of damage."[15] AmGUARD then issued a reservation of rights letter, on June 9, 2021, as the scope of coverage under the Policy for the reported loss was unclear.[16] The letter informed Plaintiff that the investigation was ongoing and may require additional time beyond what would normally be expected.[17] It notified her that the cause of the loss was still under review and reiterated a request for supporting documentation, including photographs of the Property before it had been "gutted" and any additional mitigation

---

[9] Ex. B, Fischer Depo at 38:20-25.
[10] *Id*. at 39:4-19, 40:9-22.
[11] *Id*. at 40:14-19.
[12] Ex. I, Pilot Report (April 21, 2021).
[13] *Id*.
[14] Ex. F, Claim Notes at p. 3.
[15] *Id*. at 3 (May 28, 2021).
[16] Ex. J, Letter from Eileen Kelly to Plaintiff (June 9, 2021) (the "Reservation of Rights Letter").
[17] *Id*.

estimates Plaintiff had received.[18] That same day, an AmGUARD adjuster had a phone conference with an attorney purportedly acting on behalf of the Plaintiff, and requested a letter of representation as one had not yet been received.[19]

On June 21, 2021, as the investigation continued, AmGUARD again issued a request for photographs and documentation of Plaintiff's damage.[20] The letter reminded Plaintiff that AmGUARD may not be able to provide coverage for undocumented repairs that were completed before it had an opportunity to inspect the damage.[21] Given this, it again requested that she "be sure to take before and after photos, document damages, and retain all receipts" in the event any part of the Property underwent any permanent changes, such as the removal of drywall, piping, or flooring.[22]

Plaintiff's counsel sent a letter of representation to AmGUARD dated June 28, 2021.[23] As AmGUARD had not yet received this letter, a letter of representation was again requested on July 13, 2021.[24] Once received, a copy of the reservation of rights letter and request for missing documentation was then provided to Plaintiff's counsel on July 28, 2021.[25] AmGUARD then notified Plaintiff that it needed the missing documentation before payment could be issued for the claim.[26]

Plaintiff issued a pre-suit demand letter to AmGUARD on August 18, 2021.[27] In the letter, Plaintiff estimated the replacement cost value for repairs to the Property to be

---

[18] *Id.*
[19] Ex. F, Claim Notes at p. 3 (June 9, 2021).
[20] Ex. K, Letter from Eileen Kelly to Plaintiff (June 21, 2021).
[21] *Id.*
[22] *Id.*
[23] Ex. L, Letter from Chad T. Wilson to AmGUARD (June 28, 2021).
[24] Ex. F, Claim Notes at p. 2 (July 13, 2021).
[25] Ex. F, Claim Notes at p. 2 (July 28, 2021).
[26] *Id.*
[27] Ex. M, Letter from Chad T. Wilson to AmGUARD (Aug. 18, 2021).

$156,890.29, an estimated an additional $194,118.91 for replacement of the Property's contents.[28] Plaintiff then filed suit on October 26, 2021 [Doc. 1].

On January 3, 2022, AmGUARD issued a letter to Plaintiff, notifying her that her claim was still under investigation, and requested a copy of her lease agreement (as the Property was used for rental purposes) and documentation to support the claim.[29] On January 27, 2022, AmGUARD issued payment to Plaintiff for $155,890.29 (the sum from the Demand Letter, after applying the Policy's $1,000 deductible).[30] Plaintiff has not negotiated this payment.[31] To date, the parties continue to dispute the extent of covered damages for Plaintiff's contents claim.[32]

## III.  NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff filed suit against AmGUARD on October 26, 2021, which AmGUARD timely answered on November 16, 2021. In the lawsuit, Plaintiff asserts that AmGUARD conducted an improper investigation, and wrongfully denied and delayed payment of benefits under the Policy. She asserts causes of action for breach of contract, violations of the Texas DTPA and Insurance Code, and breach of the duty of good faith and fair dealing/bad faith. As damages, Plaintiff seeks the amount of unpaid insurance benefits allegedly owed plus mental anguish, court costs and attorneys' fees, treble damages, vague exemplary damages, vague punitive damages, and statutory interest.

On May 12, 2022, the Court entered a Rule 16 Scheduling Order, which, among other things, set the deadline for dispositive motions for March 24, 2023, and set the final pretrial

---

[28] *Id.* at p. 3.
[29] Ex. N, Letter from AmGUARD to Plaintiff (Jan. 3, 2022).
[30] Ex. O, Letter from AmGUARD to Plaintiff (Jan 27, 2022)
[31] *See* Ex. B, Fischer Depo. at 47:12-16 (stating that she had not cashed the check AmGUARD sent her "for around $150,000.")
[32] AmGUARD issued payment for Plaintiff's loss of use claim on March 22, 2023.

conference for October 2, 2032 [Doc. 18]. By agreement, the parties extended the deadline to file dispositive motions to May 2, 2023.

## IV. STATEMENT OF ISSUES TO BE RULED UPON

AmGUARD's motion for partial summary judgment presents the Court with one central question: Is AmGUARD entitled to summary judgment on Plaintiff's extra-contractual claims? This issue encompasses the following sub-issues:

1. Does the existence of a bona fide dispute to coverage preclude recovery of Plaintiff's claims for AmGUARD's alleged breach of the common law duty of good faith and fair dealings, and violations of the Texas Insurance Code?

2. Does the absence of evidence that AmGUARD made any actionable misrepresentations of material policy provisions preclude recovery on the DTPA and Insurance Code claims?

3. Does the absence of evidence that any alleged misrepresentation was the producing cause of any independent damage preclude recovery on the DTPA and Insurance Code claims?

## V. STANDARD OF REVIEW

AmGUARD moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Under the rule, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). As indicated by the rule, the moving party bears the initial burden of establishing the "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 4012 F.3d 347, 349 (5th Cir. 2005). This can be shown by identifying "the absence of evidence supporting the nonmoving party's case." *Skotak*

*v. Tenneco Resins, Inc*., 953 F.2d 909, 913 (5th Cir. 1992). After this, the nonmoving party must identify specific facts that create a genuine issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585-87 (1986).

## VI. ARGUMENTS & AUTHORITIES

In her Complaint, Plaintiff asserts that AmGUARD improperly and unreasonably adjusted her insurance claim, following a catastrophic freeze event in February 2021. She alleges that AmGUARD's actions amount to a breach of its common law duty of good faith and fair dealings; violations of Chapters 541 and 542 of the Texas Insurance Code; and violations of the Texas DTPA. Because there was an ongoing dispute about the scope of coverage under the Policy and no evidence that AmGUARD misled her about her Policy's coverage, Plaintiff cannot recover on her claims.

### A. A Bona Fide Coverage Dispute Regarding Coverage Precludes Plaintiff's Claim for Breach of the Common Law Duty of Good Faith and Fair Dealing.

Plaintiff contends that AmGUARD breached its common law duty of good faith and fair dealings (i.e., that it acted in bad faith) by failing to adequately investigate and evaluate her claim. Because AmGUARD had a reasonable basis for questioning the scope and breadth of Plaintiff's claim, this is not so.

Texas law recognizes that insurers owe their insureds a duty "to deal fairly and in good faith…in the processing of claims." *Higginbotham v. State Farm Mut. Auto Ins. Co*., 103 F.3d 456, 459 (5th Cir. 1997). To recover for this claim, an insured must show that the insurer failed to settle the claim even though it "knew or should have known that it was reasonably clear that the claim was covered." *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54-55 (Tex. 1997). Importantly, insurers "maintain the right to deny questionable claims without being subject to liability for an erroneous denial of the claim." *Higginbotham*, 103 F.3d at 459. As such,

"[e]vidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (1994), *superseded by statute on other grounds as recognized in U-Haul Intl. v. Waldrip*, 380 S.W.3d 118, 140 (Tex. 2012).

An insurer's failure to reasonably investigate a claim can give rise to a bad faith claim. *Giles*, 950 S.W.2d at 56 n.5. That said, the "scope of the appropriate investigation will vary with the claim's nature and value and complexity of the factual issues involved." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44-45 (Tex. 1998). Moreover, an insured cannot recover on a bad faith claim where the insurer's "reasonable investigation reveals the claim is questionable." *United Servs. Auto. Ass'n v. Croft*, 175 S.W.3d 457, 474 (Tex. App.—Dallas 2005, no pet.)

Here, after receiving notice of Plaintiff's insurance claim, AmGUARD immediately began its investigation of its claim—a claim that was part of a catastrophic event.[33] The day after the claim was reported, AmGUARD retained an outside, field adjuster to contact Plaintiff and complete an inspection. When Calvin King, the field adjuster, conducted his March 8, 2021 site inspection, Plaintiff was present "and had the opportunity to point out all damages for evaluation." *Cox v. State Farm Lloyds*, 2023 WL 139152, at *4 (W.D.Tex. 2023). As an initial matter, because she was present for the inspection and had the opportunity to point out areas for inspection, which she did, AmGuard's investigation was not unreasonable. *Id*. (insurer's

---

[33]The court may take judicial notice that Plaintiff's claim was part of the February 2021 "Texas weather event," which the Texas Department of Insurance declared to be a "catastrophe." *See* Texas Dept. of Insurance, Commissioner's Bulletin No. B-0009-21 (Feb. 26, 2021), *available at* https://www.tdi.texas.gov/bulletins/2021/B-0009-21.html. *See also United Nat. Ins. Co. v. AMJ Invests., LLC*, 447 S.W.3d 1, 14 n 8 (Tex. App.—Houston [14th Dist.] 2014, pet. dism'd) (taking judicial notice that Hurricane Ike was a declared catastrophic event).

investigation not unreasonable when insured's public adjuster present at initial property inspection).

After the March 8 inspection was completed, Mr. King continued to communicate with Plaintiff and her property manager to assess the extent of the damage. The adjustment process was made more challenging since Plaintiff had "gutted" the house prior to Mr. King's inspection, having removed drywall for the walls and ceilings, flooring, and fixtures, and had not documented much of the process. These were actions AmGUARD had already advised Plaintiff could cause a delay in the adjustment process or denial of all or a portion of her claim.[34]

After AmGUARD received Mr. King's repair estimate for the Property's damage, it continued to seek documentation from Plaintiff for the *cause* of the damage.[35] While the February 2021 freeze "caused" damage to the Property, AmGUARD had not been provided with documentation establishing the breadth of damage that had occurred (e.g., items establishing that gutting the entire house had been necessary, instead of only repairing certain areas).[36] AmGUARD continued to investigate the claim, requesting documents and attempting to determine the extent of any covered damage, until agreeing to settle the Property damage portion of the claim (i.e., to repair the structure) in January 2022, for the estimate conveyed by Plaintiff in its Demand Letter.[37]  The evidence establishes that AmGUARD was in an ongoing process to determine the breadth of Plaintiff's claims and sustained damages, working with an outside adjuster, Plaintiff, and Plaintiff's agents. There is no evidence that AmGUARD conducted its investigation in a way that was unreasonable, much less that its investigation was so deficient "as to affirmatively cast doubt on [its] basis" for not having paid the claim. *Jajou v. Safeco Ins. Co.*,

---

[34] Ex. D, Feb. 22 and 24, 2021 Letters.
[35] *See* Ex. J, Reservation of Rights Letter; Ex. K, Letter from Eileen Kelly to Plaintiff (June 21, 2021
[36] *Id*.
[37] Ex. M, Demand Letter; Ex. O, Letter from AmGUARD to Plaintiff (Jan. 27, 2022).

2022 WL 220391, at *7 (W.D Tex. 2022). Because there was a bona fide dispute about the extent and breadth of any covered damage to the Property, Plaintiff cannot recover on its claim for breach of the common law duty of bad faith and fair dealing. *Cox*, 2023 WL 139152 at *4. As such, AmGUARD is entitled to summary judgment on this claim.

B. **Plaintiff Cannot Recover on her § 541.060(a)(1) or DTPA Claims.**

Plaintiff contends that AmGUARD violated § 541.060(a)(1) of the Texas Insurance Code and the DTPA by misrepresenting the cause and scope of, and estimate to repair the damages to the Property, as well as the available coverage under the Policy. As outlined above, the evidence establishes that the parties had a bona fide coverage dispute, as such, she cannot recover on these claims. *Higginbotham*, 103 F.3d at 460.

Additionally, to recover, for a misrepresentation claim, a plaintiff must establish that they *relied* on the alleged misrepresentation and that this reliance caused their harm. *Partain v. Mid-Continent Specialty Ins. Svcs., Inc.* 838 F.Supp.2d 547, 558 (S.D.Tex. 2012) (collecting cases); *see also Wellisch v. United Servs. Auto Ass'n*, 75 S.W.3d 53, 59 (Tex. App.—San Antonio 2002, pet. denied) ("To recover damages under either the common law or the Insurance Code and DTPA, the violations must be a producing cause of the insureds' damages."). The mere act of denying or not paying a claim is not actionable as a "misrepresentation" unless "the insured is 'adversely affected' or injured by its reliance" on a misrepresentation that the claim *is covered*. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 497 (Tex. 2018). An alleged misrepresentation that a claim is not covered is not actionably, because it cannot be "the producing cause of any damage separate and apart from those that would have resulted from the wrongful denial of the claim." *Id*. at 493 (quoting *Castaneda*, 988 S.W.2d at 198).

Here, Plaintiff has not identified any specific misrepresentation that AmGUARD (or its agents) made to her—much less, that she relied on any such misrepresentation.[38] There is no evidence that AmGUARD made a specific, actionable misrepresentation to Plaintiff that was the producing cause of any damages to Plaintiff (especially independent from policy benefits). As such, AmGUARD is entitled to summary judgment on Plaintiff's claims under § 541.060(a)(1) of the Texas Insurance Code as well as her claims under the DTPA.

### C. Plaintiff Cannot Recover on her Remaining Chapter 541 Claims.

Plaintiff further contends that AmGUARD violated sections 541.060(a)(2)(A), 541.060(a)(3), and 541.060(a)(7) by failing to pay her claim when it was reasonably clear, providing her with a reasonable explanation of its claims decision, and, in sum, failure to pay the claim without conducting a reasonable investigation. To recover, though, she "must establish the absence of a reasonable basis for denying or delaying payment of the claim and that [AmGUARD] knew, or should have known, that there was no reasonable basis for denying or delaying payment of the claim." *Higginbotham*, 103 F.3d at 459. An insured cannot recover on any of these theories if "the insurer has a reasonable basis to deny or delay payment [on the] claim, even if that basis is eventually determined by the factfinder to be erroneous." *Id*. As noted above, the undisputed evidence demonstrates that AmGUARD reasonably investigated the claim and continued to seek documentation from Plaintiff to determine the scope of the claim and covered damage. As such, Plaintiff cannot recover under these theories.

---

[38] Ex. B, Fischer Depo. 39:4-8; 40:9-22 (testifying that she does not recall any conversations with AmGUARD of its agents); Ex. Q, Pl. Ans. to Interrogatories at No. 8 (referring AmGUARD to Plaintiff's Complaint for the alleged misrepresentations at issue).

### D. Plaintiff Cannot Recover on Her Chapter 542 Claims.

Finally, Plaintiff alleges that AmGUARD is liable under Chapter 542 of the Insurance Code for failing to promptly pay her claim after the receipt of all items. This claim is also precluded.

To recover on a Chapter 542 claim, an insured must establish an insurer's (1) liability under the policy, and (2) failure to comply with the statute's prompt payment deadlines. *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 812–13 (Tex. 2019). As with claims under Chapter 541 and the DTPA, though, an insurer is *not* liable under Chapter 542 if it has a reasonable basis for denying or delaying coverage of a claim. *RLI Insurance Co. v. Costello*, 230 F.Supp.3d 737, 748 (S.D. Tex. 2017); *Higginbotham*, 103 F.3d at 460 ("Texas courts have clearly ruled that extra-contractual tort claims require the same predicate for recovery as bad faith causes of action."). As outlined above, Plaintiff conducted a reasonable investigation and reasonably disputed the extent and breadth of Plaintiff's claim. Because there was a bona fide dispute to coverage, AmGUARD is entitled to summary judgment on this claim.

## VII. CONCLUSION

For the reasons outlined above, Defendant AmGUARD Insurance Company respectfully requests that the Court grant its Motion for Partial Summary Judgment and dismiss Plaintiff's extra-contractual claims for breach for the common law duty of good faith and fair dealings, and violations of the Texas Insurance Code and DTPA, and for any additional relief to which it may be entitled.

**SHEEHY, WARE, PAPPAS & GRUBBS, P.C.**

By: */s/ Jonathan R. Peirce*
Steven O. Grubbs
Southern District Bar No. 21932
SBN 00796683
SGrubbs@sheehyware.com
Jonathan R. Peirce
Southern District Bar No. 2303246
SBN 24088836
JPeirce@sheehyware.com
Two Houston Center
909 Fannin St., Suite 2500
Houston, Texas 77010
Telephone: (713) 951-1000
Facsimile: (713) 951-1199

**ATTORNEYS FOR THE DEFENDANT
AMGUARD INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above foregoing instrument has been forwarded via e-filing in accordance with the Federal Rules of Civil Procedure on this the May 2, 2023 to the following counsel of record:

*Via E-service:*
Chad T. Wilson
Amanda J. Fulton
CHAD T. WILSON LAW FIRM PLLC
455 E Medical Center Blvd, Ste 555
Webster, Texas 77598
cwilson@cwilsonlaw.com
afulton@cwilsonlaw.com

          */s/ Jonathan R. Peirce*
           Jonathan R. Peirce