IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHANIE FISCHER, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO.: 4:21-cv-03522 |
| | § | |
| AMGUARD INSURANCE COMPANY, | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION OF DEFENDANT AMGUARD INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION FOR LEAVE FOR EXTENSION OF TIME TO FILE RESPONSE**

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW, Plaintiff, Stephanie Fischer ("Fischer") and pursuant to Fed. R. Civ. P. 56 files their *Response in Opposition of Defendant AmGuard Insurance Company's Motion for Partial Summary Judgment* [D.E.29] and pursuant to the Court's procedures, a *Motion for Leave for Extension of Time to File Response*, and would show unto this Court the following:

### I.     Motion for Leave for Extension of Time to File Response

1.     As a preliminary matter, Plaintiff files this unopposed *Motion for Leave for Extension of Time to File Response*. Defendant filed the underlying *Motion for Partial Summary Judgment* on May 2, 2023.[1] The Court's procedures require a response be filed within 21 days, or by May 23, 2023. Plaintiff's counsel was in trial from May 16 through May 19. 2023 in Denton County, Texas and came to an agreement with Defendant's counsel which extended Plaintiff's deadline to respond to the Motion to May 30, 2023. This agreement was memorialized in a Rule 29 agreement which

---

[1] D.E.29.

1

has been filed with the Court.[2] As the extension does not impact any other deadlines and is unopposed, Plaintiff offers this as good cause to grant the requested extension.

## II. Nature and Stage of the Proceeding

2. Plaintiff hereby refers the Court to, and integrates by reference, all factual and legal assertions made within their Original Complaint.[3]

3. This is a first-party residential insurance coverage and bad faith dispute. Plaintiff sued her insurer for multiple counts of breach of contract, violations of sections 541 and 542 of the Texas Insurance Code and violations of the Texas Deceptive Trade Practices Act as a result of AmGuard's misconduct and mishandling of Plaintiff's freeze and water damage claim.

4. Fischer filed her Original Complaint and jury demand on October 26, 2021.[4] Since then, the parties have engaged in lengthy discovery and litigation. The discovery period has ended and there is a jury trial setting of October 16, 2023. Further, the parties have mediated the case which resulted in an impasse.

5. Defendant has since filed a *Motion for Partial Summary Judgment* requesting the Court dismiss all of Plaintiff's extra-contractual claims.[5] Essentially, Defendant argues an adequate time for discovery has occurred in this case and that the Plaintiff *purportedly* has no evidence to support her extra-contractual claims, which is simply not the case. Plaintiff will show such egregious facts and evidencing some of the worst bad-faith conduct and blatant disregard of the Texas Insurance Code made by AmGuard that Plaintiff's counsel has seen in any first-party case.

6. As will be shown herein, Defendant is omitting key facts and evidence. Even a cursory review of Plaintiff's expert report, AmGuard's *own* claim file and the testimony of Plaintiff should

---

[2] D.E.30.
[3] D.E.1.
[4] *Id.*
[5] D.E. 29.

2

suffice for the Court to conclude that reasonable minds may differ on all counts where Defendant alleges there is no evidence to support Plaintiff's extra-contractual claims.

7. Appallingly, AmGuard now attempts to 'cherry pick' what causes of action they may be liable for after blatantly ignoring their insured, lying to the Texas Department of Insurance and failing to pay for damages to a home they deemed a "total loss". As of recent, AmGuard has become a habitual violator of the Texas Insurance Code. The insurance company routinely denies and undervalues its policyholders' claims as the first step in its claim handling process, oftentimes simply ignoring their insured when they challenge the claim outcome or cries foul. To get fully paid, AmGuard insureds must overcome baseless, bad faith deterrents and litigate their claims. This is exactly what AmGuard has done to Stephanie Fischer in this case.

8. To accept Defendants' motion at motion at face value, one must ignore generations of common-law development and precedent that when a party breaches an agreement, that party is responsible for damages arising from such a breach and consequences of its dilatory actions. Such a position is not in the interest of parties to contracts, let alone parties to adhesion contracts that have minimal bargaining and drafting power for the consumer, who is the Plaintiff in this dispute.

### III.     Plaintiff Disputes Defendant's "Undisputed Facts"

9. Plaintiff vehemently disputes the "Statement of Undisputed Material Facts" section of Defendant's *Motion for Partial Summary Judgment*. Defendant did not number its paragraphs and while the first full paragraph under this section discusses the Claim Acknowledgment Letter, the date of the letter actually sent to, and received by the insured is February 24, 2021.[6] Oddly, Defendant now offers two of the exact same letters, but cites to the earlier of the two with no indication that was ever actually sent to the insured. Further, Defendant ignores the very first

---

[6] See **Exhibit A** – Claim Acknowledgment Letter dated February 24, 2021.

3

instruction to the insured in that letter which informs the insured to "Protect your home against further damage". In fact, AmGuard's field adjuster noted that the Property had been fully gutted "due to the extensive water intrusion caused by multiple day[s] of uninterrupted water inundation".[7] Further, the removal of the interior was deemed as "mitigation" by Defendant's own field adjuster.[8] Only now does AmGuard attempt to take issue with Plaintiff mitigating their damages, while waiting over two-weeks for AmGuard to send an adjuster out to inspect.

10. AmGuard claims that there was an agreement for the damaged contents of $1942.48. This is highly disputed and a misrepresentation of both the testimony and evidence. In fact, again, in AmGuard's own claim notes it is shown the damaged contents as claimed by the insured was close to $200,000[9] and not an agreed $1,942.48. Even more troubling is the estimate prepared by Calvin King and given to the insured on April 8, 2021, which AmGuard fails to mention to the Court. Within this estimate, AmGuard's adjuster writes an estimate of damages to contents at $93,854.99 and an estimate of damages to the Property dwelling of $249,191.18. To be clear, AmGuard was on notice on April 8, 2021, that the damage to the property and its contents was at least $343,046.17 and their liability was far more than reasonably clear at that time. No payment whatsoever would be made to Ms. Fischer until January 28, 2022, at which time the parties were already well into heavy litigation of the claim.[10]

---

[7] AMGD_Fischer_004495; See also D.E.29-6 at pg.4.
[8] *Id.*
[9] AMGD_Fischer_004494; See also D.E.29-6 at pg.3.
[10] Plaintiff's counsel received a partial payment of the claim for $155,890.29, far below the estimated 'total loss' value of the claim.

**Pilot Catastrophe Services, Inc.**
P.O. Box 91299
Mobile, AL 36691-1299
Phone: 1-800-958-5485

### Summary for Contents

| | |
|---|---:|
| Line Item Total | 86,709.70 |
| Material Sales Tax | 7,145.29 |
| **Replacement Cost Value** | **$93,854.99** |
| Less Depreciation | (341.92) |
| **Actual Cash Value** | **$93,513.07** |
| **Net Claim** | **$93,513.07** |
| Total Recoverable Depreciation | 341.92 |
| **Net Claim if Depreciation is Recovered** | **$93,854.99** |

Calvin King

[11]

**Pilot Catastrophe Services, Inc.**
P.O. Box 91299
Mobile, AL 36691-1299
Phone: 1-800-958-5485

### Summary for A. Dwelling

| | |
|---|---:|
| Line Item Total | 245,196.63 |
| Material Sales Tax | 3,922.88 |
| Cleaning Mtl Tax | 0.31 |
| Subtotal | 249,119.82 |
| Cleaning Sales Tax | 71.36 |
| **Replacement Cost Value** | **$249,191.18** |
| Less Depreciation | (2,239.16) |
| **Actual Cash Value** | **$246,952.02** |
| Less Deductible | (1,000.00) |
| Less Amount Over Limit(s) | (592.02) |
| **Net Claim** | **$245,360.00** |
| Total Depreciation | 2,239.16 |
| Less Residual Amount Over Limit(s) | (2,239.16) |
| Total Recoverable Depreciation | 0.00 |
| **Net Claim if Depreciation is Recovered** | **$245,360.00** |

Calvin King

[12]

11. In an ironic turn of events, AmGuard now admits to the Court they were aware of the estimated cost to repair the home in May 2021 which was clearly indicated as 'covered damage' by AmGuard's adjuster. Not wanting to pay for the loss, AmGuard now *says* they sent a letter to

---

[11] Fischer_000284.
[12] Fischer_000283.

the insured but shows no proof thereof. Further, they *say* the cause of loss was still under review and 'unclear'. This is prima facie evidence of bad faith claims' handling at its finest given the evidence AmGuard already had in its possession at that time. Interestingly, AmGuard cites to claim file notes in support of what correspondence what sent to the insured, but never to the correspondence itself – that is because none was actually sent to the insured.

12. AmGuard then attempts to further confuse the Court by alluding to a phone call between their adjuster and an "attorney purportedly acting on behalf of the Plaintiff", which was undersigned counsel. AmGuard claims they had not received a Letter of Representation on June 9, 2021, however that too is not consistent with the truth. A Letter of Representation was sent to and received by AmGuard on May 20, 2021.[13] Undersigned counsel re-sent their Letter of Representation to Eileen Kelly in correspondence dated June 28, 2021.[14] While still receiving no information from AmGuard, undersigned counsel again reached out on July 13, 2021 – a critical fact once again left out of Defendant's motion.[15] -sent their Letter of Representation to Eileen Kelly

13. Further, AmGuard argues to the Court that they did not have photographs and documentation of Plaintiff's damage in June of 2021. This is a lie. Plaintiff submitted photographs and documentation of Plaintiff's damage to Calvin King on April 26, 2021.[16] AmGuard knows this is untrue, as they admit to the Texas Department of Insurance in their June 4, 2021 letter that AmGuard received documentation from Plaintiff on both April 26 and April 27, 2021.[17] AmGuard continues to blame their delay on a lack of photos, however, it is clear that they had the photos all

---

[13] See **Exhibit C** – Fax confirmation of Plaintiff's counsel's Letter of Representation.
[14] See **Exhibit D** – Correspondence from Plaintiff's Counsel to AmGuard's adjuster Eileen Kelly dated June 28, 2021.
[15] See **Exhibit E** – Email correspondence from Plaintiff's Counsel to AmGuard's adjuster Eileen Kelly dated July 13, 2021.
[16] AMGD-Fischer000212.
[17] See **Exhibit F** – Correspondence from AmGuard to Texas Department of Insurance dated June 4, 2021.

along and simply stalled paying the claim in an effort to attempt to deny coverage by claiming the cause of loss was undetermined.

> From: Stephanie Ambrose <stephanie.ambrose@yahoo.com>
> Sent: Monday, April 26, 2021 9:25 AM
> To: Caitlin Kretchmer <Caitlin.Kretchmer@guard.com>; Calvin King <calvin.d.king@ptsemail.com>
> Subject: [EXTERNAL] Re: Stephanie Fischer claim : STHO140050001001001
>
> CAUTION: This email originated from outside of BH Insurance.
>
> Also here is contents list I research to find everything.
>
> Also before photos for you and the Rental calendar from Evolves website.
>
> Stephanie

[18]

14. The remainder of the information from this section is replete half-facts, rather than those supported by the evidence at hand. The remaining dispute surrounds the extent of covered damages to the Property, the extent of covered damaged for Plaintiff's contents claim and the extent of damages to Plaintiff's rental loss claim, as well as the extra-contractual claims stemming from AmGuard's conduct in grossly mishandling this claim.

## IV. Summary Judgment Standard

15. On a motion for summary judgment, the moving party "bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[19] Once this initial burden is met, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"[20] In making such a determination, the Court must review all facts and inferences in the light *most favorable* to the non-movant and may not make credibility determinations or weigh evidence.[21]

---

[18] *Id.*
[19] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[20] *Id.* at 324 (citation omitted).
[21] *Robinson v. Orient Marine Co.*, 505 F3d 364, 366 (5th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)) (emphasis added). See also *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478-79 (5th Cir. 2006).

16. Therefore, the Court must deny Defendant's motion for partial summary judgment if Defendant fails to prove that there is no genuine dispute as to material facts asserted by Defendant in its motion.[22] Shockingly, AmGuard alleges there is no genuine issue of fact on the issue of Plaintiff's extra-contractual claims. A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[23] Thus, the ultimate inquiry in summary judgment motions is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.[24] As established, there are genuine issues of material fact surrounding Plaintiff's extra-contractual claims which require a trial in this matter, and Defendant is not entitled to summary judgment.

17. Further, in *Giles* the Texas Supreme Court has highly emphasized the great importance of trial courts allowing the jury to decide bad faith and that courts should not take away a claimant's Texas Constitutional right to try bad faith issues to a jury.

> *"However, we reject the suggestion that whether an insurer's liability has become reasonably clear presents a question of law for the court rather than a fact issue for the jury. Treating the issue as one of law would undeniably expand this Court's ability to overturn bad-faith judgments. We do not believe, however, that the difficulty of no-evidence review in bad faith cases could possibly justify this judicial sleight-of-hand to circumvent the constraints our Constitution imposes upon this Court. [citations omitted]…We have long recognized that the Texas Constitution confers an exceptionally broad jury trial right upon litigants.[25] And we have warned that courts must not lightly deprive our people of this right by taking an issue away from the jury.[26] A court may be entitled to decide an issue as a matter of law when there is no conflict in the evidence, but when there is evidence on either side, the issue is a fact question."*[27]

---

[22] Fed.R.Civ.P. 56(a).
[23] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).
[24] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).
[25] See *State v. Credit Bureau of Laredo, Inc.* 530 S.W.2d 288, 291–93 (Tex.1975); *Tolle v. Tolle,* 101 Tex. 33, 104 S.W. 1049, 1050 (1907); TEX. CONST.art. I, § 15; art. V, § 10.
[26] *Young v. Blain,* 245 S.W. 65, 67 (Tex. Com.App.1922, judgm't adopted, holding approved).
[27] *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997).

## V. Summary Judgment Evidence

**Exhibit A**     AmGuard Claim Acknowledgment Letter

**Exhibit B**     AmGuard Estimate of Damages Prepared by Pilot Adjusting

**Exhibit C**     Fax Confirmation of Letter of Representation

**Exhibit D**     Plaintiff's Counsel Correspondence to AmGuard

**Exhibit E**     Plaintiff's Counsel Email to AmGuard

**Exhibit F**     AmGuard Response to Texas Department of Insurance Complaint

**Exhibit G**     Claim File Note – March 30, 2021

**Exhibit H**     Claim File Note – April 26, 2021

**Exhibit I**     Claim File Note – June 9, 2021

**Exhibit J**     Agent Emails to AmGuard

**Exhibit K**     Pilot Adjusting Fina; Report – April 21, 2021

**Exhibit L**     Expert Claims Handling Report of David Wilson

**Exhibit M**     Affidavit of David Wilson – Plaintiff's Claims Handling Expert

**Exhibit N**     Affidavit of Amanda Fulton

## VI.     Arguments and Authorities

### Fischer –Facts on Bad Faith

| EVIDENCE | NARRATIVE |
|---|---|
| **Exhibit G-AMGD-Fischer000197** | This is a March 30, 2021, claim note which shows that Ms. Fischer did indeed send AmGuard the estimate of damages and documents, as requested, which AmGuard now claims they did not receive. It is clear that these documents were sent, however, AmGuard attempts to use this as an excuse not to pay the claim. A |

| | |
|---|---|
| | reasonable jury could return a verdict for Plaintiff based on these facts, which show that AmGuard knew or should have known that there was damage which should have been covered and paid. |
| **Exhibit H-AMGD-Fischer000212-224** | This is an April 26, 2021, claim note which shows that Ms. Fischer did indeed also send AmGuard the "before" photos and rental calendar, as requested, which AmGuard now claims they did not receive. It is clear that these documents were sent, however, AmGuard attempts to use this as an excuse not to pay the claim. A reasonable jury could return a verdict for Plaintiff based on these facts, which show that AmGuard knew or should have known that there was damage which should have been covered and paid. |
| **Exhibit I- AMGD-Fischer000226** | This is a letter sent by AmGuard on June 9, 2021, alleging that AmGuard is unable to confirm or deny coverage of the claim, albeit already preparing an estimate for a 'total loss' of the property and blaming the delay on the lack of before photos and estimates, however, as shown above, this information was in AmGuard's possession. |
| **Exhibit J- AMGD-Fischer000262-274** | This is a series of emails from the insured's insurance agent to AmGuard because the insured could not get any information from AmGuard in regard to the claim, or the payment. Again, AmGuard ignored the agent as well, providing no update or claim decision to the insured or their agent. A reasonable jury could return a verdict for Plaintiff based on these facts, which show that |

| | |
|---|---|
| | AmGuard failed to notify Plaintiff of the claim's decision or make a prompt payment on the claim once liability was reasonably clear. |
| **Exhibit K- AMGD-Fischer000339** | This is an April 21, 2021, final adjustment report by Pilot Adjuster Calvin King, submitted to AmGuard showing there was $247.280.80 in covered damages to the Property. AmGuard was on notice as of April 21, 2021, they were liable for these damages, yet did not issue payment on the claim. |

### A. Common Law Bad Faith

18. AmGuard argues that it is entitled to summary judgment on Plaintiff's common law bad faith claims because AmGuard had a "reasonable basis for questioning the scope and breadth of Plaintiff's claim", which is simply not true.

19. The main issue in this case is whether Defendant unfairly excluded coverage and thereby underpaid Plaintiff's claim. In *Giles* the Texas Supreme Court officially scrapped the "no reasonable basis" standard for a finding of common law bad faith and replaced it with the following: *Under this standard, an insurer will be liable if the insurer knew or should have known that it was reasonably clear that the claim was covered.*[28] Therefore, the applicable standard in Texas is whether Defendant knew or should have known that it was reasonably clear that the claim was covered.

20. Defendant attempts to allege that Plaintiff cannot recover for common law bad faith without showing that Defendant had no reasonable basis for denying the claim. It is first important to point out that Defendant knew in April of 2021 that the loss was a covered peril from which the

---

[28] *Id.* at 56.

claim made the basis of this suit arose. In fact, Defendant accepted *some* coverage for the covered peril (freeze event) and called for the coverage of the entirety of the dwelling damages as a result of that covered peril, however, AmGuard simply did not pay for it. Defendant did not bother to send a denial letter, but rather left the insured in limbo while AmGuard attempted to skirt their responsibility in paying both for the dwelling damages, contents claim and loss rental income, as covered by the Policy.

21. AmGuard now cites caselaw that discusses an "erroneous denial of the claim", yet this is a red herring meant to confuse the Court. AmGuard never denied this claim – in fact, they simply ignored the insured once they realized this was a "total loss". Only after the insured made a formal complaint to the Texas Department of Insurance would Plaintiff catch a glimpse of AmGuard's position on the claim. Below is AmGuard's response to TDI's inquiry into the claim. AmGuard represented to the Texas Department of Insurance on June 4, 2021, that the loss was a "total loss".[29] At no time prior to this correspondence was Plaintiff made aware of this fact, and only upon receiving this letter from TDI would Plaintiff be made aware. AmGuard never represented to Plaintiff that her property was deemed a "total loss", and that is because AmGuard never intended to pay it. And brazenly, AmGuard now argues to the Court that this is a bona fide coverage dispute?

---

[29] **Exhibit F**.



**HOME OFFICE LEGAL DEPARTMENT**
39 PUBLIC SQUARE
WILKES-BARRE, PA 18703
T: (570) 825-9900
F: (570) 825-5284

June 4, 2021

**Via Email**
Texas Department of Insurance
Complaints Processing – Property and Casualty
PO Box 12030
Austin, TX 78711
PCIntakeUnit@tdi.texas.gov

RE: Dept. File No.: 312879
Policy No: STHO140050
Claim No: STHO140050-001-001-001
Insured: Stephanie Fischer
Carrier: AmGUARD Insurance Company
NAIC No: 42390

This correspondence is in response to above numbered complaint filed with the Texas Department of Insurance. By way of background, AmGUARD Insurance Company (hereinafter, "AmGUARD") issued a Homeowner's Policy, No. STHO140050, to Stephanie Fischer. The Policy Period is from August 14, 2020, to August 14, 2021. The date of loss for the claim subject to this complaint was February 20, 2021.

In her complaint, our named insured Stephanie Fischer indicates "filed a claim on my policy and the company will not respond since 2/20/21." On February 21, 2021, AmGUARD received notice of loss regarding this claim via online form. On February 22, 2021, AmGUARD sent the named insured a claim acknowledgement letter. On February 22, 2021, AmGUARD immediately assigned an independent adjuster, Pilot Catastrophe Services Inc. (hereinafter "Pilot"), to adjust this loss. On February 23, 2021, AmGUARD called the named insured and left a message advising it had received the claim, claim number, and estimated timeline for Pilot to adjust the claim. On February 24, 2021, AmGUARD also sent the named insured a "catastrophe" letter due to the loss incurred because of the recent catastrophe in our named insured's area. AmGUARD contacted the named insured on three occasions, twice via letter and once via phone call, in the first three days after receiving the claim. The named insured was aware of the claims adjuster's contact information and provided documents to AmGUARD via email on April 26, 2021, and April 27, 2021.

The named insured also indicates in her complaint "I have not been paid any money." The insured is correct that there have been no claim payments made to date under Coverage A and Coverage C because the loss is estimated to be a "total loss." The named insured has been advised that a large loss review would take place between 6/1/21 and 6/4/21. A bullet point summary of the adjustment of this claim from inception is as follows:

Page **1** of **2**

[30]

22. It is clear from both the facts and testimonial evidence that there is more than a mere bona fide dispute and more than sufficient evidence of bad faith to raise a material issue of fact. As set out in the grid above there are many issues of fact in this case upon which a reasonable jury could return a verdict for Plaintiff on the issue of AmGuard being liable for common law (and statutory) bad faith because it knew or should have known that it was reasonably clear that all of Plaintiff's

---

[30] *Id.*

13

claim was covered and failed to pay the entire claim. The facts enumerated below go beyond a mere bona fide dispute. As such, the court should deny AmGuard's Motion for Partial Summary Judgment on the issue of bad faith.

**B. Texas Deceptive Trade Practices Act**

23. AmGuard argues that it is entitled to summary judgment on Plaintiff's Texas Deceptive Trade Practices Act causes of action on the same basis that Plaintiff's common law bad faith claims have no merit. The Texas DTPA contains a specific laundry list of violations, which is different than common law bad faith. By way of examples, but by no means the only examples, the extensive misrepresentation of material facts which occurred (and continues to occur) in the claims' handling is of grave concern, as evidence in the graph of facts above.

24. The above facts show evidence from which a reasonable jury could return a verdict for Plaintiff on common law bad faith. Defendant argues that this was all nothing more than a bona fide dispute. However, the facts above show that a reasonable jury could find that Allstate intentionally denied valid portions of the claim in bad faith.

**C. Breach of Duty of Good Faith and Fair Dealing**

25. Defendant argues that there is no evidence of unconscionable conduct by AmGuard arguing there is no evidence of AmGuard taking advantage of Plaintiff's lack of knowledge, ability, etc. to a glaringly, noticeable, etc. degree. However, again by way of examples, but not the only examples, the fact showing AmGuard disregarding the estimate prepared by the Pilot adjuster's findings early on in the process, which were unequivocal that the Property had widespread and extensive damage, classifying the Property as a 'total loss', yet failing to pay for the damage while trying to confuse and mislead the insured on the cause of loss is a prime example of unconscionable conduct by AmGuard. Another example of unconscionable conduct by

AmGuard is knowing that they were liable for at least $247,000 in damage to the Property alone, tens of thousands for contents as well as additional rental loss income and simply did not pay, all while ignoring the insured and their agent and attorney. As such, the court should deny Defendant's summary judgment on the issue of unconscionable conduct.

26. During the deposition of Plaintiff's claims handling expert, Mr. Wilson was clear and unequivocal that insurers owe the insured to act responsibly underneath the terms of the policy. Further, Mr. Wilson testified that the insurer has a responsibility to execute the policy in good faith to the insured. A reasonable jury could find that AmGuard, by arbitrarily overriding the initial findings of the individual they had assigned to actually adjust the claim is not acting responsibly or in good faith.

### VII. CONCLUSION AND PRAYER

27. Based on the above, Defendant is guilty of common law bad faith, unfair claims handling practices forbidden by Texas Insurance Code §541 and §542 and violations of the Texas Deceptive Trade Practices Act.

28. As shown herein, AmGuard is not only incorrect in law and fact on all counts but fails to carry its applicable summary judgment burden. Defendant is omitting key facts and mischaracterizing the evidence at hand all counts. Defendant's own adjuster found extensive *covered* damage to the Property, yet AmGuard failed to acknowledge the damage nor pay for it in its entirety. Ms. Stephanie Fischer, Defendant's own insured was routinely ignored and given misrepresentations regarding both the scope and cause of damage to the Property. AmGuard's response letter to the Texas Department of Insurance[31] alone strongly supports Plaintiff's extra-contractual claims, including those bad faith misrepresentations to both the Texas Department of

---

[31] *Id.*

Insurance and Ms. Fischer. Additionally, a quick review of Plaintiff's claims-handling expert report[32] should suffice for the Court to conclude that reasonable minds may differ on all counts of which Defendants allege there is no evidence to support both the bad-faith claims, as well as the violations of the Texas Insurance Code and DTPA violations lodged against Plaintiff during the course of their claim (and throughout litigation) by AmGuard. Numerous genuine issues of material fact preclude the granting of AmGuard's motion and Defendant's requested relief should be denied in full by the Court.

29. For the reasons stated above, Plaintiff respectfully prays that the Court deny *Defendant's Motion for Partial Summary Judgment*.

Respectfully submitted,

By: /s/ *Amanda J. Fulton*

**Chad T. Wilson**
Bar No. 24079587
Southern Bar No. 2246983
**Amanda J. Fulton**
Bar No. 24077283
Southern Bar No. 31422
CHAD T WILSON LAW FIRM PLLC
455 East Medical Center Blvd., Suite 555
Webster, Texas 77598
Telephone: (832) 415-1432
Facsimile: (281) 940-2137
eservice@cwilsonlaw.com
afulton@cwilsonlaw.com

**ATTORNEYS FOR PLAINTIFF**

---

[32] See **Exhibit L** – Expert Claims Handling Report of David Wilson.

## CERTIFICATE OF SERVICE

      I certify that a true and correct copy of *Plaintiff's Response in Opposition of Defendant AmGuard Insurance Company's Motion for Partial Summary Judgment and Motion for Leave for Extension of Time to File Response* has been sent to all counsel of record by certified U.S. Mail, facsimile, hand delivery, or electronic service on this day, May 30, 2023.

Jonathan R. Peirce
JPeirce@sheehyware.com
Steven O. Grubbs
SGrubbs@sheehyware.com
Sheehy, Ware, Pappas & Grubbs, P.C.
2500 Two Houston Center
909 Fannin
Houston, Texas 77010
Telephone: (713) 951-1000
Facsimile: (713) 951-1199

**ATTORNEYS FOR DEFENDANT**

                                                                                   */s/Amanda J. Fulton*